Matter of Taylor
2026 NY Slip Op 03447
June 3, 2026
Appellate Division, Second Department
Per Curiam
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

In the Matter of Daivery Gerard Taylor, an attorney and counsel-at-law. Grievance Committee for the Tenth Judicial District, petitioner; Daivery Gerard Taylor, respondent. (Attorney Registration No. 2669034)

Supreme Court of the State of New York, Appellate Division, Second Judicial Department
Decided on June 3, 2026
2024-05730
Hector D. Lasalle, P.J.
Mark C. Dillon
Colleen D. Duffy
Betsy Barros
Lourdes M. Ventura, JJ.

Catherine A. Sheridan, Hauppague, NY (Ann Marie Modica-Schaffer of counsel), for petitioner.
Long Tuminello, LLP, Bayshore, NY (Michelle Aulivola of counsel), for respondent.

DISCIPLINARY PROCEEDING instituted by the Grievance Committee for the Tenth Judicial District. The respondent was admitted to the Bar at a term of the Appellate Division of the Supreme Court in the Second Judicial Department on April 26, 1995.
Per Curiam.

[*1]
Per Curiam.

OPINION & ORDER
The Grievance Committee for the Tenth Judicial
District commenced a formal disciplinary proceeding pursuant to 22 NYCRR 1240.8 against the respondent by serving and filing a notice of petition and a verified petition, both dated July 8, 2024. A related disciplinary proceeding was commenced against the respondent's law partner (see Matter of Silverman, _____ AD3d _____). The respondent filed a verified answer dated July 19, 2024. The Grievance Committee served and filed a statement of disputed and undisputed facts dated July 25, 2024, to which the respondent provided a response, through counsel, dated July 30, 2024. By decision and order dated September 19, 2024, the Court, pursuant to 22 NYCRR 1240.8(b)(1), referred the matter to the Honorable Sandra L. Sgroi, as Special Referee, to hear and report. By agreement of the respondent and his partner, a joint disciplinary hearing was conducted. In separate reports dated March 11, 2025, the Special Referee sustained all four charges in the petition against the respondent and his partner, respectively. By notice of motion dated April 4, 2025, the Grievance Committee moves to confirm the report of the Special Referee and impose such discipline upon the respondent as this Court deems just and proper. In response, the respondent submits an affirmation that does not challenge the Special Referee's report, as he has admitted to all of the factual allegations asserted in the petition, but requests leniency from this Court. The respondent requests the imposition of a sanction no greater than a public censure.
The Petition
The verified petition alleges four charges of misconduct surrounding the respondent's escrow account maintained at Citibank, entitled "Silverman and Taylor PLLC, Attorney Escrow," with an account number ending in 9957 (hereinafter the escrow account). The respondent is a partner in the law firm Silverman and Taylor, PLLC. At all relevant times, the respondent and his law partner, Mark D. Silverman, were the only signatories on the escrow account.
Between January 2017 and April 2019, five disbursements relating to five different client matters, amounting to $25,777.35, were made from the escrow account without having sufficient correlating funds on deposit. Additionally, as of April 30, 2021, the respondent was required to maintain at least $629,809.79 on deposit in the escrow account in connection with 21 client matters. On April 30, 2021, the balance in the escrow account was $608,627.49, reflecting a shortage of $21,182.30.
On December 10, 2021, the respondent was required to maintain at least $1,216,647.88 on deposit in the escrow account in connection with 21 client matters. On December 10, 2021, the balance in the escrow account was $1,186,281.47, reflecting a shortage of $30,366.41.
Based on the above, charge one alleges that the respondent misappropriated funds entrusted to him as a fiduciary incident to his practice of law, in violation of rule 1.15(a) of the Rules of Professional Conduct (22 NYCRR 1200.0).
In addition to the allegations as outlined in charge one, between January 2017 and December 2021, the respondent failed to make accurate entries of all financial transactions in the escrow account, make a record of receipts and disbursements in a ledger book or similar record at or near the time of the transactions, and failed to regularly reconcile the escrow account.
Based on the above, charges two and three, respectively, allege that the respondent failed to make accurate entries of all financial transactions in the escrow account in a ledger book or similar record, at or near the time of the transactions, in violation of rule 1.15(d)(2) of the Rules of Professional Conduct, and that the respondent engaged in conduct adversely reflecting on his fitness as a lawyer by failing to regularly reconcile the escrow account, in violation of rule 8.4(h) of the Rules of Professional Conduct.
Further, based upon the conduct described in charges one through three, charge four alleges that the respondent engaged in conduct adversely reflecting on his fitness as a lawyer, in violation of rule 8.4(h) of the Rules of Professional Conduct.
The Hearing Record
On October 9, 2024, and November 7, 2024, joint prehearing conferences were conducted. A joint hearing was held on December 19, 2024. The Grievance Committee entered seven exhibits into evidence to prove its case in chief against the respondent. The respondent submitted 17 character letters, testified on his own behalf, and called two character witnesses to testify on his behalf: Thomas Russo and Ena Taylor. At the hearing, the respondent admitted to all of the factual allegations in the petition and testified in mitigation.
The respondent testified that in 1999, he formed Silverman and Taylor, PLLC (hereinafter the law firm), with his law partner, Silverman. The respondent testified that the law firm employed one paralegal and a receptionist during its 25 years in business. The respondent described the law firm as a "multi-specialty firm specializing in personal injury [and] criminal defense. But we are a neighborhood firm, so we do family court matters, we do traffic matters. . . . If someone comes . . . into us . . . our office, with a problem, more times than not, we can help them."
The respondent testified that both he and Silverman are the signatories on the escrow account and they share joint responsibility for the management and oversight of the escrow account. The respondent became aware of an issue with the escrow account when there was an unauthorized debit, which was found by their bookkeeper when she was reviewing the bank statements. The respondent and Silverman immediately notified the bank, worked with the bank to resolve the issue, and discovered additional instances of unauthorized debits in the escrow account. The respondent stated that Silverman eventually closed the escrow account in December 2021 on the advice of the bank and "others" to avoid future fraud. The respondent admitted that it was not until the Grievance Committee's investigation that the over-disbursements and other issues with the escrow account were discovered.
According to the respondent, while he and Silverman regularly reconciled the escrow account, mistakes were made, and they did not review the individual client ledgers. The respondent testified that after the Grievance Committee found a number of deficiencies in the escrow account, they sought assistance from their accountants to perform a reconciliation of each client matter. The respondent testified that the escrow account deficiencies were caused by mistakes due to over-disbursements. In the Belfort matter, which resulted in a $2,000 over-disbursement, the respondent settled the matter for $18,000 but mistakenly disbursed fees as if he had settled it for $20,000. This error resulted in the client receiving a check for more money than she should have and the law firm receiving more money than it should have.
In the Garcia matter, which the respondent testified was handled by Silverman, the law firm paid water bills for the client that should not have been paid, resulting in an over-disbursement of $1,065.35.
In the Hilton matter, which the respondent testified was a matrimonial action handled by Silverman, the wife was required to pay the total sum of $4,000 to the husband. The wife paid the law firm $100 installments once a month. Silverman would deposit the check into the escrow account and then disburse a check to the husband. The respondent testified that after a while, Silverman instructed the law firm's bookkeeper to wait until the law firm had received multiple checks before making a payment to the husband. At some point, Silverman instructed the bookkeeper to pay the husband the sum of $500, and a check was issued for $600, resulting in an over-disbursement of $100.
In the Peralta matter, which resulted in a $100 over-disbursement, the respondent testified that Silverman paid the client $100 more than he should have.
As to the Satterwhite matter, which resulted in an over-disbursement of $22,512, the respondent testified that this was a personal injury matter in which he dealt with an out-of-state insurance company. The matter settled for $22,500. The respondent testified that the law firm received a check from the insurance company, but the check was ultimately dishonored because the insurance company had gone out of business. The respondent said that this was a truly unusual occurrence that put him in an uncomfortable position because the client was expecting his settlement money. The respondent wanted to do right by the client, so he and Silverman transferred $22,500 from their operating account into the escrow account and issued a check to the client to make him whole. Thereafter, the respondent commenced an action against the client's insurance company to recoup the funds paid by the law firm. The respondent successfully resolved the claim and received a check for $22,500 from Progressive Insurance, which was deposited into the escrow account on April 26, 2019. The respondent testified that due to "a litany of bad things that happened," the Progressive check also was dishonored on April 30, 2019. Again, without first verifying that the funds were available, on April 29, 2019, the respondent issued check no. 3134 in the amount of $22,500 made payable to the law firm as reimbursement for the funds that it had fronted to the client, causing another shortage of $22,500 in the escrow account. The respondent testified that the situation was a "very unusual set of circumstances" and "a comedy of errors."
The respondent further testified that since discovering the issues in the escrow account, he and Silverman have taken remedial measures and transferred personal funds to cover any deficiencies. The respondent said that no client check was dishonored because the escrow account "was always fluid and [there was] always a lot of money in that account." The respondent also stated that to the extent that some of the over-disbursements from the escrow account resulted in extra money being paid to a client, he and Silverman did not ask for the money back, that it was their mistake, and that they "owned up to it" and took the loss.
Regarding the respondent's community activities, the respondent testified that he is an active member of the local branch of the NAACP, that he is involved in the Freeport Recreation Center, that he participates in Toys for Tots every year with the Freeport Police Department, and that he makes charitable donations to various groups that help children in the community.
The Special Referee's Report
In her report, the Special Referee sustained all charges in the petition and noted the "substantial mitigation presented" attesting to the respondent's excellent reputation and integrity, including his charitable and volunteer efforts in the community. The Special Referee found that the respondent provided evidence of corrective measures taken, including the deposit of personal funds to cover any shortfall in the escrow account, and that he displayed genuine remorse and acceptance of responsibility, as well as cooperating with the Grievance Committee.
The Grievance Committee now moves to confirm the Special Referee's report and impose such discipline upon the respondent as this Court deems just and proper. The Grievance Committee provides that the respondent has a prior disciplinary history including that in July 2006, the respondent and the law firm were convicted of scheme to defraud in the first degree (one count) and offering a false instrument for filing in the first degree (four counts). As a result of the respondent's felony conviction, he was automatically disbarred (see Matter of Taylor, 43 AD3d 196). The respondent's conviction was later reversed and the indictment against him was dismissed (see People v Taylor, 55 AD3d 640). By decision and order dated December 16, 2008, the respondent was reinstated to the practice of law (see Matter of Taylor, 57 AD3d 791).
In response, the respondent does not challenge the Special Referee's report but requests leniency from this Court. The respondent asserts that he has submitted evidence of his pro bono efforts, various community activities, and charitable efforts, the absence of any harm to clients, the absence of any allegation that escrow account funds were intentionally converted, the corrective measures taken, the respondent's remorse, and the unlikelihood that he would engage in similar misconduct in the future. Therefore, the respondent requests a sanction no greater than a public censure.
Findings and Conclusion
In view of the respondent's admissions and evidence adduced at the hearing, we find that the Special Referee properly sustained all four charges in the petition. Accordingly, the Grievance Committee's motion to confirm the Special Referee's report is granted.
In determining the appropriate measure of discipline, notwithstanding the aforementioned mitigating factors, the respondent failed to abide by the rules governing the maintenance of an attorney escrow account for several years, during which time he misappropriated funds entrusted to him as a fiduciary, allowing a rolling deficiency of up to up to $30,366.41 to persist in the escrow account. The respondent only realized there was an issue with the escrow account well into the Grievance Committee's investigation and only after the Grievance Committee identified the over-disbursements and deficiencies. Further, the respondent did not complete a proper reconciliation of the escrow account until approximately six years after the first over-disbursement.
Under the totality of the circumstances, we find that the respondent's conduct warrants a suspension from the practice of law for a period of three years (see Matter of Pacifico, 213 AD3d 12).
LASALLE, P.J., DILLON, DUFFY, BARROS and VENTURA, JJ., concur.
ORDERED that the Grievance Committee's motion to confirm the Special Referee's report is granted; and it is further,
ORDERED that the respondent, Daivery Gerard Taylor, is suspended from the practice of law for a period of three years, commencing July 3, 2026, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than January 3, 2029. In such application (see 22 NYCRR 1240.16), the respondent shall furnish satisfactory proof that during the period of suspension, he (1) refrained from practicing or attempting to practice law, (2) fully complied with this opinion and order and with the terms and provisions of the rules governing the conduct of disbarred or suspended attorneys (see id. § 1240.15), (3) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11(a), and (4) otherwise properly conducted himself; and it is further,
ORDERED that the respondent, Daivery Gerard Taylor, shall comply with the rules governing the conduct of disbarred or suspended attorneys (see id. § 1240.15); and it is further,
ORDERED that pursuant to Judiciary Law § 90, the respondent, Daivery Gerard Taylor, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,
ORDERED that if the respondent, Daivery Gerard Taylor, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency, and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 1240.15(f).
ENTER:
Darrell M. Joseph
Clerk of the Court